UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD BROWN, ) | |
| ) | Case No. 23-cv-10452 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| COOK COUNTY AUDITOR'S OFFICE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANUM OPINION AND ORDER**

Plaintiff Ronald Brown brings this action against his former employer, the Cook County Auditor's Office,[1] claiming that his termination was the result of religious and racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Before the Court is the County's motion to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the County's motion [14] in full.

**BACKGROUND**

The following allegations are taken as true. Brown is an African American and a Baptist pastor. Brown began working as an Administrative Assistant at the Cook County Auditor's Office in 2008. In August 2021, after vaccines became widely available, the Cook County Bureau of Human Resources imposed a Mandatory COVID-19 Vaccination for Personnel Policy (the "Policy"). Under the Policy, an employee could seek a medical or religious exemption from the vaccination requirements. If an employee did so, the Equal Employment Opportunity ("EEO")

---

[1] Defendant notes that the "Auditor's Office" of Cook County is incorrectly named in the complaint and responds as "Cook County" as a whole. Defendant does not dispute service or the propriety of it responding to this lawsuit as "Cook County." The Court will therefore refer to Defendant as "Cook County" or "the County" in this Opinion.

Office would evaluate the request and engage in an interactive dialogue to determine whether an accommodation was appropriate and could be granted without imposing an undue hardship.

In September 2021, Brown requested a religious accommodation from compliance with the Policy (the "Request"). In the Request, Brown stated that the "new law conflicts with [his] personal health care philosophy, religious beliefs, and cultural practices." When prompted to describe the conflict, he explained:

> My strong religious convictions have guided me to believe that the development of the vaccine, like many commercial drugs is made with poisons, carcinogenic substances and aborted fetus tissue. My cultural and religious belief aligns with a holistic health care system that focuses on herbalism and the use of nature to heal the body.

During a subsequent email correspondence with the EEO Office about the Request, Brown was asked to "provide a brief overview of [his] religious practice or belief." Brown responded, in part:

> It is a violation of my beliefs to desecrate my body, my temple to God, with foreign objects against my will… I will not be encouraged or forced to contaminate my body with manufactured drugs, poisons, black magic, or sorcery.
>
> Forcing me to take the Covid Vaccine and threaten my livelihood is an evil and vile act… This is also a violation of my constitutional rights and moral beliefs against having certain chemicals in my body. The body is the temple of the Holy Spirit and should not be used for medical treatments that are unnecessary and vile. Substances in the vaccine are possible harmful to the human body, and we are called to protect the body and not to participate in experimental chemical testing.

He also included various quotations from religious scripture in addition to his asserted beliefs.

On October 19, 2021, the EEO Office denied Brown's request for religious accommodation and advised him that he would be disciplined and/or discharged if he failed to get vaccinated. Brown did not comply. In April 2022, Brown participated in a disciplinary proceeding regarding his non-compliance with the Policy. On June 27, 2022, he was terminated. Brown did not specify his race or religion at any point in either the Request or email correspondence. But he alleges that the

EEO Office would have been aware of both characteristics from in-person interactions he had with various EEO Office employees in the past, among other things.

Around the same time as Brown's accommodation request process, Brown's supervisor Mary Modelski, who is Catholic and white, also requested a religious accommodation to the Policy. In an email exchange with the EEO Office regarding her accommodation request, Modelski stated:

> My religious belief calls for free will and conscious. Yes you are correct, the inoculations are derived from fetal (kidney) tissues cells obtained from the 1970's. But no matter how remote the fetus tissue is from me, on my last day when I must account for my actions. To be asked did I take the inoculation for my God, my family or my well-being, I would have to answer no, but for a paycheck. Then I could be asked was I not adequately clothed, sheltered or fed, for which, I must say abundantly so. Therefore, in my right conscience I cannot nor will not put a paycheck over my God.

Modelski's accommodation request was eventually granted by the EEO Office.

Brown subsequently filed this case, alleging religious discrimination (Count I) and racial discrimination (Count II) in violation of Title VII.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

    **1. Religious Discrimination**

Invoking the First Amendment's Free Exercise Clause, Brown alleges that the rejection of his Request and his subsequent termination under the Policy constitutes religious discrimination under Title VII. Brown's complaint also makes passing reference to the Health Care Right of Conscience Act, 745 ILCS 70/5 (the "Act"). Even if Brown intends to assert an additional claim, however, this Court has already ruled that section 13.5 of the Act explicitly bars claims arising from measures intended to prevent the contraction or transmission of COVID-19. *See Carrero v. City of Chicago*, No. 23-CV-00650, 2024 WL 22099, *6–7 (N.D. Ill. Jan. 2, 2024) (Coleman, J.). Brown provides no reason to depart from that ruling. The Court therefore dismisses any claim under the Act and focuses this analysis on Brown's Title VII claim.

To state a claim for discrimination under Title VII, a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). However, a party may plead himself out of court by alleging facts that establish an impenetrable defense to his claims. *Id.* at 1086. To successfully plead a claim for religious discrimination under Title VII, an employee must demonstrate that "(1) an observance or practice that is religious in nature, and (2) that is based on a sincerely held religious belief, (3) conflicted with an employment requirement, and (4) the religious observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment." *Kosenka-Pistell v. Cook Cnty.*, No. 1:23-CV-1462, 2023 WL 6936800, at *1 (N.D. Ill. Oct. 3, 2023) (Bucklo, J.) (citing *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023), *vacated on other grounds*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023)).

The County does not dispute that elements (3) and (4) are satisfied here. Instead, the Court finds that Brown's pleadings fail to satisfy elements (1) and (2). The Seventh Circuit test for whether

4

a sincerely held belief qualifies as religious for Title VII purposes is whether the belief "occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (quoting *United States v. Seeger*, 380 U.S. 163, 165 -66, 85 S. Ct. 850 (1965)). Such beliefs "deal[ ] with issues of ultimate concern," such as "matters of the afterlife, spirituality, or the soul, among other possibilities." *Id.* Religious beliefs do not need to be "acceptable, logical, consistent, or comprehensible to others," *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and "the court does not concern itself with the truth or validity of religious belief." *Snyder v. Chicago Transit Auth.*, No. 22 CV 6086, 2023 WL 7298943, at *7 (N.D. Ill. Nov. 6, 2023) (Shah, J.) (citing *Adeyeye*, 721 F.3d at 451).

Still, the Court must determine whether the belief at issue is "religious" and not a mere personal conviction, as only the former "warrant[s] the heightened protection of Title VII." *Id.*, at *7. The EEOC has issued guidance consistent with these principles, explaining that "objections to a COVID-19 vaccination requirement that are purely based on … nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. EEOC, https://perma.cc/6NR9-L6YK (archived November 1, 2023).

Between his initial application and subsequent email correspondence with the EEO Office, Brown puts forth two ostensibly religious objections to the Policy: (1) That the vaccine is made with aborted fetus tissue, and (2) that his body is a temple to God and receiving the vaccine would constitute a desecration of that temple. As described in more detail below, however, the context of these allegations shows that Brown's beliefs are based not in religion but in his more broadly defined personal preferences, such as his "cultural beliefs" and adherence to "holistic healing." Broadly stated worldviews, made up of "cultural beliefs," personal health preferences, and so on, may in

5

some sense be *informed* by religion, but that is not enough to raise them to the level of religious beliefs: "[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Even if Brown's personal beliefs are "sincere and strongly held, [they are] not religious in nature, and, therefore, not protected by Title VII." *Guthrie-Wilson v. Cook Cnty.*, No. 91:23-CV-362, 2023 WL 8372043, at *2 (N.D. Ill. Dec. 4, 2023) (Bucklo, J.) (citing *Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania*, 877 F.3d 487, 488 (3d Cir. 2017)).

### a. Abortion-Related Objection

Although the Seventh Circuit has apparently not yet addressed the precise issue before the Court, the Eighth Circuit recently decided a similar COVID-vaccine Title VII case. *See Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024). In *Ringhofer*, the court considered a motion to dismiss five separate religious accommodation requests related to an employer's COVID-19 vaccination mandate, ultimately ruling that all five plaintiffs plausibly connected their respective refusals to receive the vaccine with sincerely held religious beliefs. *Id.* at 901. Two of these requests were based on abortion-related objections to the vaccine similar to the one raised by Brown. *Id.*

Nevertheless, the objections are only superficially similar across both cases. That similarity goes only as far as a shared reference to the term "abortion." The *Ringhofer* plaintiffs centered their objections on abortion, explained their beliefs about abortion (including their religious roots), and detailed how and why taking the specific COVID-19 vaccine would make them "a participant" or "complicit" in abortion. *Id.* In contrast, Brown's abortion-related objections are secondary to and indistinguishable from the purely secular notions that make up the bulk of his Request. Brown's Request is based on a wide variety of values, including his "personal health care philosophy, religious beliefs, and cultural practices." Indeed, even when pressed to be more specific, Brown fails to tie

6

the COVID-19 vaccine itself to aborted tissue. Instead, he vaguely asserts that "many commercial drugs [are] made with poisons, carcinogenic substances and aborted fetus tissue." This broad mistrust of commercial drugs is based on a "*cultural* and religious belief" favoring "a holistic health care system that focuses on herbalism and the use of nature to heal the body." Brown emphasizes the bodily effects of the vaccine with various references to "poisons," "carcinogenic substances," and "experimental chemical testing." Not only does Brown fail to explain how his religious beliefs would prevent him from receiving the COVID-19 vaccine specifically, but he never even asserts an explicit opposition to the use of fetal cells or the general practice of abortion.

Courts across circuits have held that beliefs amounting to a "blanket privilege" for an employee to make unilateral decisions and "exercise bodily autonomy" do not constitute religious beliefs. *Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023) (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1025 (3d Cir. 1981)); *see also*, *Fallon*, 877 F.3d at 487 (holding that health concerns presented as religious beliefs are not afforded protection under Title VII); *Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300, at *3 (N.D. Ill. Apr. 10, 2024) (Kennelly, J.)) (finding that an employee's unadorned allegations that he held vague "'Christian' beliefs 'against getting the COVID-19 vaccine'" were insufficient to support Title VII religious discrimination claim because one must allege "facts explaining how his beliefs conflict with vaccination"); *Nelson-Godfrey v. Cook Cnty.*, No. 23 C 16893, 2024 WL 2722668, at *3 (N.D. Ill. May 28, 2024) (Bucklo, J.) (same) (citations omitted). "This is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected." *Fallon*, 877 F.3d at 492-493. But in the present case, Brown's objections to the COVID-19 vaccine are plainly grounded in his negative views regarding "commercial drugs." *See Guthrie-Wilson*, No. 91:23-CV-362, 2023 WL 8372043, at *3 (finding that

7

the Plaintiff's beliefs were not sincerely religious because they were "facially tied" to health concerns regarding the vaccine's effects).

### b. Body-as-a-Temple Objection

Likewise, Brown does almost nothing to explain how his belief—that "[his] body is the domain of the Holy Spirit"—would conflict with him receiving a COVID vaccine, expressing only a general opposition to bodily contamination with no explanation of why the vaccine would be contaminative. Courts routinely reject similar claims. *See Nelson-Godfrey*, No. 23 C 16893, 2024 WL 2722668, at *3 (collecting cases rejecting objections based on vague "body-as-a-temple" beliefs). Brown's case is no different. Throughout his Request, Brown clearly demonstrates that his primary concern about the Policy is the potential harms of the vaccine and his lack of personal autonomy under the mandate, rather than the religious principles to which he briefly refers. Ultimately, "a refusal to be vaccinated that is grounded in the belief that vaccines cause harm is essentially rooted in medical, not religious concerns." *Guthrie-Wilson*, 2023 WL 8372043, at *2 (citing *Fallon*, 877 F.3d at 492).

To support a claim that his beliefs are religious in nature, Brown must do more than vaguely assert an unspecified conflict with general religious beliefs. It is not enough for an employee to add a few references to religion in an otherwise comprehensive enumeration of their secular concerns regarding vaccination. Simply put, "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion." *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023);[2] *see also Prida v. Option Care Enters., Inc.*, No. 5:23-CV-00905, 2023 WL 7003402, at *4 (N.D. Ohio Oct. 24, 2023) (Title VII's definition of religious belief is "capacious, but it does not expand to include every belief, opinion, or ideology one might embrace."). An employee is not permitted to redefine a purely personal preference or

---

[2] *Passarella* is currently on appeal before the Seventh Circuit.

aversion as a religious belief, otherwise he "could announce without warning that white walls or venetian blinds offended his 'spirituality,' and the employer would have to scramble to see whether it was feasible to accommodate him by repainting the walls or substituting curtains for venetian blinds." *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935 (7th Cir. 2003).

Even liberally construed, Brown's allegations do not plausibly establish a sincere religious practice or belief entitled to Title VII protection. The County's motion to dismiss is granted as to Count I.

### 2. Racial Discrimination

Brown also alleges that the rejection of his Request and his subsequent termination constitute race discrimination under Title VII, citing the fact that Modelski's accommodation request was granted where his was denied. Title VII provides, in pertinent part, that it is illegal for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a).

For a Title VII discrimination claim to survive a motion to dismiss, "a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774 (7th Cir. 2022) (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021)). Brown does not need to present a prima facie case of discrimination. *See id.* at 777. He must do more, however, than merely plead that he belongs to a protected group and was wrongfully terminated; "[t]here must be some *facts* that make the wrongful [termination] contention plausible." *Id.* at 776.

There is nothing in Brown's complaint that permits the Court to infer his race and termination were connected. Brown alleges only that he was treated differently than a white colleague. But "the mere fact that an employee of one race is [treated differently] than an employee

9

of another race does not, without more, warrant an inference of racial discrimination." *Reid v. Chicago Hous. Auth.*, No. 12 C 01975, 2014 WL 3375643, at *4 (N.D. Ill. July 10, 2014) (Tharp, J.) (citation omitted). Brown does not go further to suggest that his differential treatment was linked to his race. Indeed, the dearth of allegations about race must be contrasted with the numerous alleged distinctions between Modelski and Brown: she was a manager, he was an administrative assistant; she was a Catholic, he was a Baptist; her request was supposedly based on religious objections alone, his was based on a combination of "cultural" and "holistic health" factors. Without more to suggest that Brown's treatment was connected to his race, rather than any number of these other alleged or unalleged factors, Brown's claim fails.

Accordingly, the County's motion to dismiss is granted as to Count II.

**CONCLUSION**

For these reasons, the Court grants Cook County's motion to dismiss [14] in full. Plaintiff's complaint is dismissed without prejudice. If Plaintiff believes in good faith that he can cure the deficiencies identified in this Opinion, he may amend his complaint within 30 days.

**IT IS SO ORDERED.**

Date: 7/16/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge